37 So.2d 183

**GARST v. JOHNSON et al.**

**8 Div. 357.**

Supreme Court of Alabama.

Oct. 14, 1948.

Stockton Cooke, Jr., of Sheffield, for appellant.

Kirk & Rather, of Tuscumbia, for appellees.

LAWSON, Justice.

R. M. Garst and E. R. Cary, on April 28, 1925, executed a promissory note payable to John W. Johnson one year after date. On the same day, as security for the payment of the note, Garst and Cary, together with their wives, executed a mortgage to Johnson covering certain real property in Colbert County. Garst subsequently acquired Cary's rights in the property.

The mortgage in question was foreclosed on April 24, 1933. At the foreclosure sale R. H. Huston purchased the property on behalf of his wife, Mrs. Daisy V. Huston, for the sum of $1,185.73. On May 22, 1933, John W. Johnson, the mortgagee, as attorney in fact for the mortgagors, under the powers of sale contained in the mortgage, executed a foreclosure deed to Mrs. Daisy V. Huston.

On March 30, 1935, R. M. Garst filed this bill in the circuit court of Colbert County, in equity, against John W. Johnson, R. H. Huston, and Daisy V. Huston. Testimony was noted by the respective parties on May 14, 1946. On May 30, 1946, the trial court rendered its decree denying relief to complainant and dismissing his bill. From that decree complainant appealed to this court.

The bill is most difficult of analysis. It is not clear from either the averments of the bill or the prayer for relief exactly what the complainant was seeking to accomplish. There are some averments which seem to indicate that complainant was seeking to exercise a statutory right of redemption. But other averments, when considered in connection with the prayer, evidence an effort on the part of complainant to enforce the equity of redemption, electing to have the foreclosure of the mortgage and the deed executed thereunder declared to be void. Alternative relief is not sought.

Counsel for appellant, in brief filed in this court, treats the bill as one filed by a mortgagor to exercise his equity of redemption. We will so consider it. In this connection we quote from brief of counsel

for appellant: "The bill in this cause was filed by the mortgagor to exercise his equity of redemption due to the premature foreclosure of the mortgage and prays for an accounting of the amount due on said mortgage indebtedness and an opportunity to pay such amount."

■■■ Complainant's right to relief, therefore, was dependent upon the proof showing that the foreclosure was invalid. In Summerford v. Hammond et al., 187 Ala. 244, 65 So. 831, it was said:

"As has been frequently said by this court, the equity of redemption is essentially different from the statutory right. The latter never exists until the former is barred. A valid foreclosure destroys the one and creates the other; but an invalid sale neither destroys the one nor creates the other. Rainey v. McQueen, 121 Ala. 191, 25 So. 920; Bolling v. Jones, 67 Ala. 508.

"A sale under and in accordance with the powers contained in a mortgage cuts off the equity of redemption as effectually as a foreclosure in equity."

To like effect are the following cases: Martin v. Martin, 237 Ala. 512, 187 So. 732; Moseley v. Ritter et al., 226 Ala. 673, 148 So. 139; Randolph et al. v. Bradford et al., 204 Ala. 378, 86 So. 39; Thompson v. Suttle, 244 Ala. 687, 15 So.2d 590.

■■■ The proof does not sustain complainant's contention that the foreclosure sale was had without good and legal notice of the same in accordance with the powers contained in the mortgage.

The mortgage contained the following provision: "Provided nevertheless that if we pay the amount due upon the said note above described, on or before the day when the same falls due, according to the tenor and stipulations thereof, then this conveyance is to become void; but on our failure to pay said note, as stipulated therein, in par [sic] or in full, or should we fail to keep all taxes assessed against said real estate paid, then, or in either event above enumerated, the indebtedness herein evidenced shall become at once due and payable and the said John W. Johnson is hereby authorized to take possession of the real estate before described, and after giving notice of the time, place and terms of sale, by publication once a week for three successive weeks in some newspaper published in Colbert County, Alabama, may proceed to sell the same to the highest bidder for cash in front of the Courthouse door of Colbert County, Alabama, and execute title to the purchaser, or purchasers and devote the proceeds of the sale to the payment, first, of the expense of taking possession of the real estate, advertising, selling and conveying the same, together with a reasonable attorney's fee for foreclosing this mortgage, whether under the power of sale herein contained, or otherwise, second, of the amount, together with interest and lawful charges that may be due upon the same note above described, and lastly, if there be any surplus of the proceeds the same is to be returned to the undersigned."

From the recitals of the foreclosure deed in evidence and from other evidence it appears without contradiction that the mortgagee did advertise the mortgaged property for sale once a week for four successive weeks in a newspaper published in Colbert County, in each of which advertisements notice was given that the foreclosure sale would be held on the 24th day of April, 1933, in front of the courthouse door in Colbert County, Alabama, within the legal hours of sale, and that the mortgaged property would be offered for sale at public outcry to the highest bidder for cash.

■■■ It is now the settled law of this state, whether invoked in a suit at law or in equity, that a deed to the purchaser at a foreclosure sale, containing recitals showing full compliance with the terms prescribed by the mortgage, is prima facie evidence of facts stated therein, and that such recitals are sufficient to establish the fact of foreclosure and the validity of the sale, as against the mortgagor and his privies in title, in the absence of evidence to show that the recitals are untrue. Dinkins et al. v. Latham, 202 Ala. 101, 79 So. 493, and cases there cited.

The debt secured by the mortgage became due on April 28, 1926. It was not paid at that time. It was never paid. Ap-

pellant, the mortgagor, testified that Johnson, the mortgagee, expressly agreed to extend the date of the payment of the debt from year to year upon payment of interest. This Johnson emphatically denies. But interest payments were made and accepted by the mortgagee each year. The last interest payment was made in May, 1932.

But conceding, without deciding, that by virtue of such an agreement or because of the acceptance of interest payments without the mortgagee taking any action to collect the principal debt, that the principal did not become due until April 28, 1933, and therefore was not due at time of foreclosure, in the absence of other default, we are of the opinion that the mortgagee had the right to foreclose at the time that he did. This, for the reason that it is without conflict in the evidence that at the time the foreclosure proceedings were had, State, county, and municipal taxes assessed against the property were delinquent. As before pointed out, the mortgage contained a provision that if the mortgagors failed to pay taxes assessed against the property the debt secured by the mortgage "shall become at once due and payable."

The evidence shows that Garst had been consistently unconcerned as to the payment of taxes. Johnson on one or more occasions accepted interest payments at times when the taxes were unpaid. This, appellant contends, constituted a waiver per se of the provision of the mortgage entitling the mortgagee to call the principal because of default in payment of taxes. But such is not the rule. The right to foreclose for default in the payment of taxes is not waived by the acceptance of a payment of interest. Freund et al. v. Weisman et ux., 101 N.J.Eq. 245, 137 A. 885, 53 A.L.R. 522; Bergman v. Fortescue, 74 N.J. Eq. 266, 69 A. 474. Nor does the payment of taxes by the mortgagee constitute a waiver of the right to foreclose. Brickell v. Batchelder, 62 Cal. 623; Rasmussen v. Levin, 28 Colo. 448, 65 P. 94; Union Central Life Ins. Co. v. Puckett, 97 Kan. 428, 155 P. 930.

The mortgagee's failure to foreclose on the first delinquency did not constitute a waiver of his right to foreclose on a subsequent similar delinquency. In Parker v. Olliver, 106 Ala. 549, 18 So. 40, 42, the mortgage contained a provision for the maturity of the debt if the mortgagor allowed taxes on the mortgaged property to remain unpaid. It was there said: "The stipulation in question was a continuing one, to be taken advantage of by the mortgagee or not, as he might elect, at any time when the contingency should happen or recur. His right of election upon a delinquency with reference to the taxes of 1893 was not impaired by the facts that there was a like delinquency in respect of the taxes of 1892, and that he did not then elect to treat the debt as being brought to maturity thereby. Having the absolute right to declare the note due upon any such delinquency, his failure to exercise it in one instance did not preclude its exercise in a subsequent instance. The first delinquency passed without such election; the right was as fully secured to him by the terms of the contract as to a succeeding delinquency as it had been with reference to the first. And the fact that he had elected not to declare the debt due upon the first delinquency gave no assurance whatever that a subsequent right of election would be exercised in the same way. And it cannot be said that his election at one time not to declare the maturity of the debt induced the respondents to again allow the taxes to become delinquent, when they knew then, as well as in respect of the first delinquency, that, notwithstanding his pretermission at that time, he had the unqualified right to make the contrary election. If they acted upon a different assumption, it was gratuitous,—mere speculation upon which of two courses equally open to him he would adopt; and this action could in no sense be said to have been induced by him."

The legitimate purpose for which a power of sale is given in a mortgage is to secure repayment of the mortgage indebtedness. If this power is perverted from its legitimate purpose and is used for the oppression of the debtor or to enable the creditor to acquire the property

for himself, or other illegitimate purpose, a court of equity will enjoin the sale or set it aside after it is made. Talley v. Webster, 222 Ala. 188, 131 So. 555, and cases cited. But there is no evidence in this record which even remotely tends to show that the foreclosure sale was had to oppress the debtor or to enable the mortgagee to obtain the property. He did not do so. The evidence fails completely to show any collusion between the mortgagee and the purchaser at the foreclosure sale.

We are of the opinion that the trial court's decree is correct and should be affirmed. It is so ordered.

Affirmed.

BROWN, FOSTER, and STAKELY, JJ., concur.